BUCKNER v. SOUTHERN RY. CO.—96 S. W. (2d) 600.

Eastern Section. November 2, 1935.

Petition for Certiorari denied by Supreme Court, May 16, 1936.

McMillan & Carter, of Knoxville, for plaintiff in error.
Cates, Smith & Long, of Knoxville, for defendant in error.

McAMIS, J. Plaintiff in error, Gladys Buckner, as administratrix of the estate of her deceased husband, Hugh Buckner, instituted this suit to recover damages for the death of her intestate, who sustained injuries resulting in his death while riding upon one of defendant in error's engines. The circuit judge sustained a motion for peremptory instructions in behalf of the railway company and the administratrix has appealed in error to this court. The case may be better stated by referring to the parties as plaintiff and defendant as they appeared in the lower court.

The accident occurred on May 3, 1933, after plaintiff's intestate had boarded one of defendant's engines for the purpose of catching a ride to his home. He stationed himself either on the sloping portion of the water tank located just back of the coalbin or on the footboard which is located at the extreme rear of the tender. The engine was backing in the direction of Buckner's home and collided with another of defendant's engines being backed in the opposite direction. The deceased was either thrown from his position on

the tender by the impact or, seeing the approaching locomotive, jumped off in an attempt to save himself, resulting in injuries from which he died.

Plaintiff's intestate, Hugh Buckner, for several years prior to his death was employed by defendant as a pipe fitter's helper at the John Sevier yards located several miles east of the city of Knoxville. He resided at or near the Costner shops of defendant some three or more miles northwest of Knoxville. It also appears that other employees working at John Sevier yards also resided near Costner shops. Still others resided in the environs of the city proper.

The record shows that for some time after the location of the yards east of the city the employees were left to their own devices in securing daily transportation to and from John Sevier yards. Later, however, at the solicitation of the organized crafts composed of members of the various trades employed at John Sevier yards, of which the deceased was a member, defendant agreed to provide a work train to leave Costner shops in the morning, passing through Knoxville and thence to John Sevier yards, and returning in the afternoon to the station at Knoxville. All employees were invited to ride on this train, but, though the declaration alleges to the contrary, all the proof shows, without dispute, that the destination of the work train on returning from John Sevier yards was at the depot in Knoxville and that the agreement did not contemplate or make any provision for the transportation of those workmen living at Costner shops further than to the depot on the return trip from John Sevier yards in the afternoon. It therefore appears that, in so far as the agreement may be said to control, the status of deceased as a passenger terminated when he disembarked from the work train at the depot on the return trip from John Sevier yards.

However, it is plaintiff's theory, and the contention upon which she chiefly relies, that a custom and practice had arisen whereby the several employees, including her intestate, who lived at Costner shops, were permitted or allowed to ride on the engine and tender to Costner shops after the work train was broken up at the depot. The accident in which Buckner was injured occurred between the depot and Costner shops and while Buckner was riding on the tender of the engine, it is said, according to the alleged custom aforementioned. It is insisted that he was, therefore, lawfully upon the engine at the time of the accident at the implied invitation of defendant, or at least by its acquiescence.

The circuit judge was of opinion plaintiff's intestate was guilty of contributory negligence in riding on the tender of the engine which, as a matter of law, was sufficient to bar recovery. We think he was correct in so holding and in instructing the jury to return a verdict in favor of defendant.

It appears without dispute that deceased boarded the tender of

the engine knowing it was about to be backed in the direction of Costner shops. There is some conflict as to his exact position on the tender, particularly whether he was on the footboard or upon the water tank located just back of the coal bin, but all of the proof shows that either was a position of danger—so considered by every one who rode in that position—and, under the undisputed proof, we do not think reasonable minds could entertain any other view except that it is dangerous to ride a backing engine in either position plaintiff's intestate is said to have occupied at the time of the injury.

Under the holdings of the courts in this state, alluded to hereinafter, it is perhaps immaterial whether plaintiff's intestate was riding by invitation implicit in a long-continued acquiescence upon the part of defendant's servants or agents in charge of its engines. However, we do not think plaintiff is in position to rely upon the theory, so earnestly pressed by counsel, that her intestate was riding by virtue of an established and long-continued custom upon the part of defendant to accommodate the deceased and other employees living at Costner shops by permitting them to ride the engine and tender on their return in the afternoon from John Sevier yards. It is true that this practice had continued for some time, and at times as many as five or six employees were accommodated in this manner. However, there is no proof that any officer or agent of defendant except those in immediate control of the engines, namely, conductors, engineers, and firemen, ever knew of, or sanctioned, this indulgence. On the other hand, it appears affirmatively and without contradiction that every one of the employees, including those who rode as well as the engineers, conductors, and brakemen, knew that the practice was positively forbidden by the company's rules. This fact was brought home to deceased a few days before his death, when he was told by the conductor not to ride the engine.

It cannot fairly be said, therefore, that plaintiff's intestate was riding at the invitation of defendant. The contention that he was so invited rests solely upon the fact that those in charge of the engine had not enforced the rule against employees riding engines except when necessary in the discharge of some duty connected with the operation of the train, and proceeds upon the theory of imputed authority arising from extensive and long-continued violation of the rule. But how can it be said that those in immediate charge of the engine possessed ostensible or implied authority to extend an invitation to ride when to do so was known to be in contravention of the company's rule? There is no room for implications in such case. Knowledge of the existence of the rule is notice in and of itself that those extending the invitation to ride were exceeding their authority as agents of the company.

In Kansas City M. & B. Railroad Co. v. Williford, 115 Tenn.,

108, 88 S. W., 178, 180, the injured party was riding on the tender of a backing engine with the knowledge of the train foreman, who permitted him to do so without objection, just as in this case plaintiff's intestate, under the view most favorable to plaintiff, was riding with the knowledge of the conductor in charge of the engine and without objection. The court held that the injured party could claim nothing more than protection from injury by willful, wanton, or intentional act of the carrier and its employees. The court further held, in the same case, that the deceased was guilty of such gross contributory negligence in riding upon the footboard of the tender that he could not recover and that the circuit judge erred in not granting the motion of defendant for peremptory instructions. The court pointed out that the engine is at all times the most exposed and perilous portion of the train and cited many authorities, including prior Tennessee cases, holding that one not engaged in the performance of any duty there is guilty of contributory negligence sufficient as a matter of law to bar recovery.

It is not deemed necessary to extend this opinion by citing other authorities upon the question. Many cases are cited in the course of the opinion in the Williford Case, supra. The facts of this case cannot be differentiated in any material respect from the facts in that case, and we feel compelled to hold that the deceased, Buckner, was guilty of such negligence in riding the tender of the engine in violation of the rules of the company and in the face of a known and appreciated danger that his administratrix cannot recover in any aspect of the case.

Some criticism is made of the finding of the circuit judge that plaintiff's intestate was standing upon the footboard at the time of the collision, there being some proof that he was seated on the water tank. The plaintiff was entitled, as counsel insist, to the view of the evidence most favorable to plaintiff, but it is immaterial whether he was seated upon the water tank or standing on the footboard. Either was a position of known and obvious danger, and the court's finding, if not strictly accurate and correct, affords no basis for reversal.

It is insisted, however, that, even though Buckner was guilty of negligence in boarding the engine and thus assuming a position of danger, there was evidence from which the jury might have found that the death of plaintiff's intestate was the result of the willful and wanton conduct of defendant. The undisputed proof shows that the engine upon which Buckner was riding was not traveling faster than 5 or 6 miles per hour, and it is not disputed that every possible effort was made to stop the engine and avoid the collision after the other engine appeared as an obstruction. It also appears that like efforts were made to stop the other engine after the engine on which Buckner was riding came in sight of the engineer, and as a matter

of fact the two engines were practically stopped when the collision occurred. The accident occurred on a curve which doubtless accounts for its occurrence, but there is no possible basis for a finding of willful and wanton negligence upon the part of defendant. A similar insistence was made in the Williford Case, supra, but the court said:

"Let it be conceded that the collision might have been avoided if the speed had been within the limit prescribed by the ordinance, and running at the greater rate under these conditions was negligence on the part of the crew in charge of the engine, then we have a case where both parties by their negligence contributed to the injury which would bar this action." Notwithstanding evidence tending to show that the engine was being run in a congested and much traveled area of the city at as much as 40 miles per hour, the court held that the circuit judge erroneously denied defendant's motion for peremptory instructions.

■■ It is also insisted that the doctrine of the last clear chance applies in this case to relieve plaintiff of the effect of deceased's contributory negligence. We do not think this contention can be sustained under the facts of this case. As we have seen, deceased was guilty of negligence in riding the engine, and this act of negligence continued up to the time the approaching locomotive appeared upon the track, i. e., up to the time the danger of injury to deceased became immediately imminent. The peril which, when discovered, imposes a duty to exercise care to avoid the impending injury, must be an actual one. Knowledge that the person injured is in a position which might become perilous upon the happening of some contingency does not impose such duty. As we have seen, deceased was guilty of negligence in riding the engine, and this act of negligence continued to the time the approaching locomotive appeared upon the track. Up to that point his negligence was at least equal to that of defendant, for those in charge of the engine had no more reason to anticipate the presence of an obstruction than did deceased, and as soon as the obstruction appeared the brakes were immediately applied and everything possible done to stop the engine and avoid the collision. Under these circumstances, we think defendant did its full duty to plaintiff's intestate and that she cannot recover.

All assignments of error must be overruled and the judgment affirmed, with costs.

Portrum and Ailor, JJ., concur.